Salih YILMAZ, M.D., Appellant,

v.

Eula McGREGOR, Tommie James, Charles James and Erma Ruth Ervin, as Heirs of the Estate of Louis D. James, deceased, and Lachunda James, Appellees.

No. 01–07–01116–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 17, 2008.

Rehearing Overruled Aug. 13, 2008.

---

Jennifer D. Cully, Michael C. Feehan, Kacal, Adams & Law, P.C., Houston, TX, for Appellant.

Monica C. Vaughan, Charles R. Houssiere III, Houssiere, Durant & Houssiere, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Salih Yilmaz, M.D., files this interlocutory appeal from the trial court's denial of his motion to dismiss a medical malpractice lawsuit brought by appellees, Eula McGregor, Tommie James, Charles James, and Erma Ruth Ervin, as heirs of the Estate of Louis D. James, deceased, and Lachunda James.[1]

In two issues, appellant contends that the trial court erred by denying his motion to dismiss appellees' claim, under Texas Civil Practice and Remedies Code section 74.351,[2] because appellees' expert reports were (1) untimely served and (2) substantively insufficient.

We reverse and remand.

## Background

Appellant was a physician in Navasota, Texas, who provided medical care to patients at a nursing home, Navasota Nursing and Rehabilitation, L.P. ("NNR"). Louis D. James was a 76-year-old patient of appellant and a resident at NNR.

On the night of December 25, 2005,[3] James was allowed to wander outside into the cold. When he was found, NNR personnel contacted appellant, who instructed that James be transported to the hospital. At the hospital, James presented with a body temperature of 82 degrees. James was described as emitting a "horrific odor," having dried feces on his body and flies swarming about his person, and displaying malnutrition. Medical personnel

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2007) (authorizing interlocutory appeal); TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005 & Supp.2007) (governing health care liability claims).

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007) (requiring plaintiff in health care liability claim to timely serve sufficient expert report).

3. We apply the version of Texas Civil Practice and Remedies Code section 74.351 in effect on the date that the cause of action accrued. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) historical note (Vernon Supp.2007) [Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590]. Generally, with exceptions not applicable to this appeal, a cause of action accrues on the date that the alleged breach of the standard occurred. *See Shah v. Moss*, 67 S.W.3d 836, 841 (Tex.2001). Here, appellant does not assert a specific date of the alleged breach that led to James's death. Appellees assert in their brief that the breach occurred on December 25, 2005, when James was left outside in the cold and James's overall health condition was discovered at the hospital. Appellant does not contradict this date in his reply brief. The record shows that appellees also asserted this date in their response to appellant's motion to dismiss the suit in the trial court. The record also shows, however, that appellees asserted in their original and amended petitions that the event occurred on December 24, 2004. The expert report of John P. Conomy, M.D., J.D., contained in the record is inconsistent in that it reflects that the event took place on "December 24, 2004," "December 24, 2005," "Christmas Day 2004," "Christmas Day 2005," and on "Christmas Eve and Christmas Day 2004." (Emphasis added.) The expert report of Nevada A. Lee, M.D., reflects that the event took place on December 24, 2004.

 Article 74.351 became effective September 1, 2003 and the 2005 amendments to the Act became effective on September 1, 2005. Hence, whether the event at issue in this suit, and therefore the accrual date of appellees' cause of action, occurred in December 2004 or December 2005 determines which version of article 74.351 applies. Both appellant and appellee apply the version of article 74.351 that became effective September 1, 2005, which comports with appellees' statement of the accrual date as December 25, 2005. We assume without deciding that the accrual date appellees present on appeal, that of December 25, 2005, is correct and apply the version of the statute that was in effect at that time—which is the same version that the parties apply.

were not able to revive him, and James subsequently died.

On January 25, 2006, appellant closed his medical practice, which was located at 1225 Leake Street in Navasota, Texas. On January 31, 2006, appellant's medical license was suspended by the Texas Medical Board for reasons unrelated to the instant suit. On April 17, 2006, appellant moved to Turkey.

On July 3, 2006, in his annual statement to the Secretary of State, appellant changed the address of the principal office of his professional association from "1225 Leake St.—Navasota Prof. Bldg., Navasota, TX 77868" ("Leake Street address"), to "P.O. Box 302, Navasota, TX 77868."

On December 7, 2006, appellees served, by certified mail, a Notice of Medical Liability Claim[4] to appellant at the Leake Street address. The notice was returned marked "unclaimed."

On March 9, 2007, appellees filed their original petition, alleging that appellant breached the standard of care in his treatment of James and that this breach was the proximate cause of James's death. On May 9, 2007, appellees attempted to serve appellant with process at the Leake Street address. The officer's return states, "Unserved.... No longer works at this address." On May 21, 2007, appellees attempted service at appellant's home at 1015 East Washington Avenue, Navasota, Texas, which was also returned unserved

and with the notation, "No longer lives in Grimes Co." Appellees made no further attempts to serve appellant with process until they sought substituted service through the Secretary of State on August 13, 2007.

In the interim, on July 6, 2007, which was one day prior to appellees' statutory deadline for filing the requisite expert reports,[5] appellees allegedly served appellant with their expert reports. On the certificate of service appended to the expert reports, appellees' attorney, Monica Vaughan, attested that she served appellant with the report at the Leake Street address. In addition, on this same day, appellees filed an amended petition, to which they appended a certificate of service by Vaughan, attesting that she had served appellant with the amended petition at the Leake Street address.

On August 13, 2007, appellees sought service of process through the Secretary of State, requesting service of their "original petition" on appellant at the Leake Street address. Appellees did not include a copy of their expert reports. There is not a Whitney certificate in the record indicating that process was forwarded to appellant.[6] On September 25, 2007, however, appellant answered the lawsuit.

On October 12, 2007, appellant moved to dismiss the suit on the basis that appellees had failed to timely serve him with an

---

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.051 (Vernon 2005) (requiring health-care-liability claimant to give written notice of claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before filing of suit).

5. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (requiring claimant to serve expert report on party or party's attorney within 120 days of filing of original petition).

6. A "Whitney certificate" is issued by the Secretary of State when it has received two copies of the petition and citation and has forwarded one copy of each to a defendant in compliance with Texas Civil Practice and Remedies Code section 17.045. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.045(a) (Vernon 1997); *Whitney v. L & L Realty Corp.,* 500 S.W.2d 94, 95–96 (Tex.1973); *Wright Bros. Energy, Inc. v. Krough,* 67 S.W.3d 271, 273 n. 1 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

expert report and therefore the trial court was required to dismiss the suit.[7] Specifically, appellant argued that appellees filed their expert reports at the Leake Street address, a "known wrong address," at a time that appellant was not a party to the suit, not having been served with the suit until August 21, 2007. After appellant was served with the suit, he obtained a copy of the expert reports on his own from the trial court. Appellant then filed a second motion to dismiss, alleging in the alternative that the expert reports were substantively deficient.

On November 7, 2007, in their response to the motion to dismiss, appellees asserted that they complied with section 74.351 when they attempted service at appellant's last known addresses and that service of the expert reports should be imputed to appellant. Appellees appended to their response copies of the expert reports. According to appellant, appellees' service of the response on his attorney constituted the first service of the expert reports on appellant.

On the same day, appellees also served on appellant's attorney an amended certificate of service, in which Vaughan attested that, in addition to having served appellant with the expert reports via certified mail at the Leake Street address back on July 6, 2007, she had also on that day served the expert reports to appellant via certified mail at "P.O. Box 302, Navasota, TX 77868," the address that appellant had on file with the Secretary of State.

Also on the same day, by affidavit, Vaughan's legal assistant Wanda Carte, attested that she served the expert reports to appellant, via certified mail, at the Leake Street address and to "P O Box 302." The record shows certified mail forms bearing handwritten notations that a mailing occurred to the Leake Street address and to "P.O. Box 302."[8] The forms lack postmarks and any indication that postage was paid. However, the record includes printouts from the United State Postal Service website showing that an item bearing the same tracking number as shown on each certified mail form was "Delivered" to "Navasota, Texas, 77868," on July 10, 2007. There is no indication of to whom it was given or of who signed for the items at each address. There are no return receipts concerning these mailings in the record. Appellant attested by affidavit that he never received the expert reports in July 2007.

After a hearing, the trial court denied appellant's motions to dismiss. The trial court held that appellant had been properly served, that appellant had waived his right to object to the expert reports, and that, in the alternative, the expert reports were sufficient. This appeal ensued.

### Standard of Review

We review a trial court's ruling on a motion to dismiss under section 74.351(b) for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 871 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). A trial

---

**7.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (requiring plaintiff to serve on each party or party's attorney one or more expert reports not later than 120th day after date original petition was filed); § 74.351(b)(2) (compelling trial court to dismiss suit with prejudice for failure to comply).

**8.** As appellant notes, there is a one-digit discrepancy between the tracking number Carte states in her affidavit and the tracking number of the certified mail form on which Carte handwrote "P O Box 302."

court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re Bass*, 113 S.W.3d 735, 738 (Tex.2003). "A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance." *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). When reviewing discretionary matters, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992).

 The ruling in this case requires us to interpret a statute. Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). Questions of law will be reviewed de novo. *See Gutierrez*, 237 S.W.3d at 871.

### Timely Service of Expert Reports

In his first issue, appellant contends that the trial court erred by denying his motion to dismiss appellees' suit because appellees did not timely serve him with an expert report, as required by Texas Civil Practice and Remedies Code section 74.351. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351.

Pursuant to section 74.351, a plaintiff in a health-care-liability suit must, "not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert ... for each physician or health care provider against whom a liability claim is asserted." *See id.* § 74.351(a). If, as to a defendant physician, an expert report has not been served within the 120–day period, the trial court must, on the motion of the affected physician and subject to subsection (c),[9] enter an order dismissing the claim with prejudice and awarding to the physician reasonable attorney's fees and costs. *Id.* § 74.351(b). Each defendant physician whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date the report was served, otherwise all objections are waived. *Id.* § 74.351(a).

Here, because appellees filed their lawsuit on March 9, 2007, they were required to serve one or more expert reports on appellant or appellant's attorney by July 9, 2007. *See id.* § 74.351(a). Appellees assert that they timely served their expert reports on July 6, 2007. Appellant asserts that he did not receive these reports on this day. It is undisputed that appellant had not yet been served with citation and the petition on or before July 6, 2007. Appellant was not served with process until August 21, 2007. Appellant contends that, therefore, appellees did not serve their expert reports on a "party" prior to the expiration of the 120–day period, as required. *See id.* § 74.351(a). Hence, the trial court was required, on appellant's motion, to dismiss the suit. *See id.* § 74.351(b)(2).

Appellees contend that they met their burden when they attempted to serve the requisite export reports on appellant on July 6, 2007, which was within the 120–day period from the filing date of their original petition. Appellees contend that the definition of "party" in section 74.351 should be broadly construed to include "potential parties."

---

**9.** If an expert report has not been timely served because elements in the report are found deficient, the trial court may grant one 30–day extension to the claimant to cure the deficiency. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon Supp.2007).

■ The plain language of section 74.351(a) provides that a claimant must serve on each "party or party's attorney" one or more expert reports no later than the 120th day after the date the original petition was filed. *Id.* § 74.351(a). When interpreting a statute, our objective is to ascertain and follow the legislature's intent. *Sultan v. Mathew*, 178 S.W.3d 747, 749 (Tex.2005). "To discern that intent, we consider the objective the law seeks to obtain and consequences of a particular construction." *Id.* Words and phrases must be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). The term "party" is not defined in section 74.351. Section 74.001 provides that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(b) (Vernon 2005).

■ To be a "party" to a lawsuit, one generally must be named in the pleadings and either be served, accept or waive service, or make an appearance. *See Ex Parte Bowers*, 886 S.W.2d 346, 349 (Tex. App.-Houston [1st Dist.] 1994, writ dism'd w.o.j.). Merely being named in a petition as a defendant does not make one a "party" to the lawsuit. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991). A person who has not been properly served has no duty to participate in the proceedings. *Ross v. Nat'l Ctr. for the Employment of the Disabled*, 197 S.W.3d 795, 797–98 (Tex.2006).

■ We recently considered the definition of the term "party" found in section 74.351 in *Poland v. Ott*, No. 01–07–00199–CV, 2008 WL 257382 (Tex.App.-Houston [1st Dist.] Jan. 31, 2008, no pet.) (mem. op., not designated for publication). There, defendant Dr. Ott moved to dismiss plaintiff Poland's suit on the basis that Poland had failed to serve its expert report until 123 days after Poland filed its suit in the trial court. *Id.* at *1. Poland conceded the point, but argued that it had also served its expert report on Dr. Ott's representative insurer nearly three months prior to the filing of the suit. *Id.* at *2. Dr. Ott moved to dismiss Poland's suit, arguing that service of the expert reports was untimely. *Id.* at *3–4. The trial court agreed and dismissed the suit. *Id.*

On appeal in *Poland,* we reasoned that the legislature's use of the terms "party" and "defendant" in section 74.351 indicated its intent "for this section's service requirements to apply only after the filing of a claim in court" because "[o]ne is not a 'party' or a 'defendant' until a claim is asserted against one in a suit." *Id.* at *6–7 (construing former section 74.351). We concluded that, because a defendant implicated in an expert report "must file and serve any objection to the sufficiency of a report not later than the 21st day after the date it was served, failing which all objections are waived," there, Dr. Ott could not have timely filed objections to the report because the deadline would have expired before a proceeding existed in which that objection could have been filed. *Id.* at *7. We further concluded that "the 21–day deadline for a defendant's objections makes no sense unless a court claim has already been filed against the defendant." *Id.* (recognizing that we must presume that legislature intended reasonable result). Because the expert report had not been served upon a party within 120 days of the filing of the suit, we affirmed the trial court's dismissal of Poland's suit. *Id.* at *8–9.

Here, unlike *Poland,* a lawsuit had been filed in the trial court on the date appellees assert that they served their expert reports on appellant. However, our appel-

lant faces much the same dilemma as the defendant in *Poland* because, here, the service of the expert reports on July 6, 2007 triggered the 21–day period during which appellant was required to enter any objections, and our appellant was without a forum within which to enter his objections before the period closed. Appellant had not yet been served with the lawsuit, had not accepted or waived service, and had not made an appearance. *See Bowers,* 886 S.W.2d at 349. Even if appellant had received the expert reports, because he was not served with citation and the petition until August 21, 2007, the 21–day period for objecting to the substance of the expert reports expired before appellant had notice of the suit.

Case law on the specific facts presented herein is limited. However, in a recent case on similar facts, the Thirteenth Court of Appeals considered whether an expert report served on the defendants prior to service of process was sufficient to comply with section 74.351 and concluded that it was not. *Ramos v. Richardson,* Nos. 13–05–204–CV, 13–05–205–CV, 2008 WL 1822763, at *1, 3 (Tex.App.-Corpus Christi Apr. 24, 2008, no pet.). The court recognized that section 74.351 assumes that the expert report is served on "a party." *Id.* at *3. The court reasoned that a health care provider should not be required to respond and object to a report before it is served with a lawsuit because, "[i]f a potential party were required to submit to the trial court's jurisdiction before being served, it would be required to waive issues regarding jurisdiction and service requirements." *Id.* The court concluded that a defendant should not be forced to waive proper service of process to protect its rights under chapter 74. *Id.*

We agree that, here, even assuming that appellees served appellant with expert reports on July 6, 2007, such service was prior to service of process on appellant and was completed at a time in which the trial court did not have personal jurisdiction over appellant. *See In re Sheppard,* 193 S.W.3d 181, 189 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (stating that trial court does not have personal jurisdiction over defendant until defendant has been served, has waived service, or has entered general appearance). Although appellant later answered subsequent service of process, and answering a suit dispenses with the necessity for the issuance of formal service of citation with regard to jurisdiction, appellant was without notice of the suit at the time the expert reports were filed and had no duty to participate in the suit. *See* Tex.R. Civ. P. 121; *Ross,* 197 S.W.3d at 797–98. Like *Ramos,* appellant was faced with waiving proper service of process and jurisdictional issues to protect his rights under chapter 74. We cannot conclude that this was the legislature's intent.

Appellees contend that Texas courts have read the term "party" in section 74.351 expansively, to include healthcare providers against whom a claim has been brought as well as healthcare providers against whom a claim *may* be brought. To support their contention, appellees cite *In re Memorial Hermann Hospital System,* 209 S.W.3d 835 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding) and *In re Raja,* 216 S.W.3d 404 (Tex.App.-Eastland 2006, orig. proceeding). These cases do not stand for the proposition appellees propound. The issue in both cases was whether Texas Rule of Civil Procedure 202, which generally allows pre-suit depositions to investigate a claim,[10] is restricted by Civil Practice and Remedies Code section 74.351(s), which provides, with certain exceptions, that until a claimant has served

---

10. *See* Tex.R. Civ. P. 202.

the expert report as required by 74.351(a) all discovery is stayed,[11] and section 74.351(u), which provides that after a claim is filed and until an expert report is served, all claimants, collectively, may take no more than two depositions.[12] *Mem'l Hermann Hosp. Sys.*, 209 S.W.3d at 837, 839–40; *Raja*, 216 S.W.3d at 405–06, 409. In both cases, the courts reasoned that the statute clearly indicated the legislature's intent to condition a claimant's ability to depose a doctor upon the presentment of a proper expert report and concluded that section 74.351 controlled. *Mem'l Hermann Hosp. Sys.*, 209 S.W.3d at 839; and *Raja*, 216 S.W.3d at 406–07.

■ Next, appellees ask this court to impute constructive notice of the service of the expert reports to appellant. Appellees contend that the record shows that the Secretary of State sent a letter to appellant at the Leake Street address on July 30, 2007 concerning his professional association's annual statement and that appellant answered the letter in October 2007. Appellees contend that this is evidence that appellant was selectively receiving mail in July 2007, when the expert reports were sent to the Leake Street address. This fact, even if true, concerns alleged activity occurring three months after appellees' attempted service of process and nearly a month after appellees' attempted service of the expert reports. Hence, this fact, in and of itself, which could be explained in myriad ways, is not sufficient evidence for us to conclude that appellant was selectively answering mail or purposely avoiding service in this case.

Appellees cite *Bohannon v. Winston* for the proposition that chapter 74.351 requires plaintiffs to serve their expert reports regardless of whether the healthcare provider has been served the petition and citation in the lawsuit. 238 S.W.3d 535 (Tex.App.-Beaumont 2007, no pet.). In *Bohannon,* the plaintiffs conceded that they had failed to serve their expert report within 120 days of the filing of their original petition. *Id.* at 537. The plaintiffs argued, however, that the defendant-physician was estopped from invoking the 120–day deadline for the service of expert reports because the physician has caused the delay in the service of process. *Id.* The plaintiffs first attempted to serve the physician with process at his business, but were unsuccessful because the offices were closed for the day. *Id.* A note on the physician's door stated that the physician would be moving to new offices in the summer of 2006. *Id.* The constable noted on the return, "moved out to new address." *Id.* Testimony showed that the note informed clientele of a future move, but the existing offices were in regular operation and were simply closed that afternoon. *Id.*

The constable then attempted to serve the physician at the new address, but the petition was again returned unserved, with a notation, "not moving in for two more

---

11. Pursuant to section 74.351(s):

Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s) (Vernon Supp.2007).

12. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(u) (Vernon 2007).

months ... [physician] is in between offices now and ... will not be moved in for two more months.... [C]itation should reissue in late July to be served then." *Id.* The plaintiffs decided not to serve the citation and petition as well as the expert reports on the physician until he moved to his new address. *Id.*

On appeal in *Bohannon,* the plaintiffs argued that a party who fails to provide a current address for service cannot complain of a delay in actual notice. *Id.* The court rejected this reasoning because the doctor was not yet "a party" at the time the constable attempted service. *Id.* The court affirmed the trial court's dismissal of the suit because the expert reports were not served within the statutory 120–day period. *Id.* at 538.

In *Bohannon,* the plaintiffs had neither served the physician with process nor with an expert report. We do not read *Bohannon* as standing for the proposition appellees assert, namely, that a claimant must serve the expert report even if no service of process has been achieved.

We conclude that the legislature's use of the term "party" in section 74.351 indicates its intent for this section's service requirements to apply to a physician or health care provider who has been served with citation and the petition, has accepted or waived such service, or has made an appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a); *Ross,* 197 S.W.3d at 797; *Bowers,* 886 S.W.2d at 349.

Appellees argue that this conclusion will invite gamesmanship on the part of defendant healthcare providers because the defendant could avoid service of process of the petition until the 120–day deadline expires. The Beaumont Court of appeals

addressed this same argument in *Bohannon* and concluded that "[t]he potential for gamesmanship does not vest the courts with the power to legislate; instead, we must apply the statute as it is written and address a party's misconduct in an appropriate manner when it occurs." *Bohannon,* 238 S.W.3d at 538. We agree. Here, there is no clear evidence of misconduct on the part of appellant, and we must construe the statute as written. *See Sultan,* 178 S.W.3d at 749.

Accordingly, appellant's first issue is sustained.[13]

### Conclusion

We reverse the order of the trial court denying the motion to dismiss and remand with instructions to enter an order of dismissal of appellees' claims against appellant, with prejudice, and for entry of reasonable attorney's fees and court costs, in accordance with Civil Practice and Remedies Code section 74.351(b).

---

**13.** Having sustained his first issue, we do not reach appellant's second issue, which concerns the sufficiency of the expert reports.