COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-002-CV

 

 

CHANCE W. DINGLER, M.D.                                                  APPELLANT

 

                                                   V.

 

LINDA DIANE TUCKER AND                                                   APPELLEES

MYRLE TUCKER

 

                                                 AND

 

LINDA DIANE TUCKER AND                                                 APPELLANTS

MYRLE TUCKER

 

V.

 

NOCONA MEDICAL CLINIC, P.A.                                              APPELLEE

 

                                              ------------

 

           FROM
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

 








I.  Introduction

In these
accelerated, interlocutory appeals, Appellant Chance W. Dingler, M.D. appeals
the trial court=s order denying his motion to
dismiss the health care liability claims of Appellees Linda Diane Tucker and
Myrle Tucker, and the Tuckers as Appellants appeal the trial court=s order
dismissing their health care liability claims against Appellee Nocona Medical
Clinic, P.A.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(b) (Vernon Supp.
2009).  We will reverse both appeals.

II.  Factual and Procedural Background

The Tuckers
filed their original petition on November 5, 2007, alleging health care
liability claims against Dr. Dingler and Nocona.  Specifically, they alleged that in July or
August 2005, Linda=s cardiologist placed in her a
drug eluting coronary stent.  A few
months later, Dr. DinglerCagainst the direction of the
cardiologistCstopped Linda=s
aspirin and Plavix medications in anticipation of performing a gastrointestinal
examination.  Shortly after Dr. Dingler
directed Linda to stop taking aspirin and Plavix, she was admitted to the
hospital, complaining of chest pains; an EKG and blood tests confirmed that she
had suffered an acute myocardial infarction, or heart attack.  The Tuckers alleged that Linda sustained
bodily injuries and damages as a direct and proximate result of Dr. Dingler=s and
Nocona=s
negligence.








The
Tuckers served Nocona with citation by certified mail on November 6, 2007.  They also attempted to serve Dr. Dingler with
citation by certified mail; but the citation, which issued November 5, 2007,
was returned unclaimed after the post office made several attempts to serve it.

Nocona
filed its original answer on November 26, 2007. 
D. Michael Wallach of the law firm of Wallach, Andrews, and Stouffer,
P.C. signed the answer on behalf of Nocona.

On
November 26, 2007, within 120 days of filing suit, the Tuckers served Michael
Wallach with the expert report and curriculum vitae of Douglas W. Jenkins,
M.D.  Nocona timely filed objections to
Dr. Jenkins=s report on December 18, 2007,
objecting that the report failed to set forth Dr. Jenkins=s
qualifications to opine on the standard of care for a health care provider like
Nocona and that the report failed to identify the applicable standard of care,
how Nocona breached the standard of care, and how Nocona=s breach
of the standard of care caused the Tuckers=
injuries.  To the extent the Tuckers
sought to impose vicarious liability on Nocona for the alleged acts or
omissions of Dr. Dingler, Nocona made the same objections to the report as it
pertained to Dr. Dingler.  On June 6,
2008, Nocona filed a motion to dismiss the Tuckers= claims.








On June
11, 2008, approximately seven months after the Tuckers filed the lawsuit, they
served Dr. Dingler with citation by personal service.  On July 7, 2008, Dr. Dingler filed his
original answer.  Jennifer M. Andrews of
the law firm of Wallach & Andrews, P.C., the same law firm representing
Nocona,[1]
signed the answer on behalf of Dr. Dingler. 
The Tuckers never personally served Dr. Dingler with Dr. Jenkins=s reportCeither
before or after service of citation.  Dr.
Dingler filed a motion to dismiss the Tuckers= claims
on the ground that the Tuckers had failed to comply with civil practice and
remedies code section 74.351(a) by failing to serve either him or his attorneys
with an expert report within 120 days after the date the original petition was
filed.

The
Tuckers state that they filed a first amended original petition on August 26,
2008, the same day the trial court conducted a hearing on Dr. Dingler=s and
Nocona=s
objections and motions to dismiss.  The
amended petition included an allegation that Nocona was vicariously liable for
the actions or inactions of Dr. Dingler. 
The trial court later signed its orders denying Dr. Dingler=s motion
to dismiss but sustaining Nocona=s
objections to Dr. Jenkins=s report and granting its motion
to dismiss.  These appeals followed.








III.  Standard of Review

We
review a trial court=s order on a motion to dismiss a
health care liability claim for an abuse of discretion.  Jernigan v. Langley, 195 S.W.3d
91, 93 (Tex. 2006).  A trial court
abuses its discretion if it acts in an arbitrary or unreasonable manner, or if
it acts without reference to any guiding rules or principles.  Bowie Mem'l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (citing Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986)).  We may not
substitute our judgment for the trial court=s
judgment.  Id.  Nor can we determine that the trial court
abused its discretion merely because we would have decided the matter
differently.  Downer, 701 S.W.2d
at 242.

IV.  Expert Report Requirements








Civil
practice and remedies code section 74.351 provides that, within 120 days of
filing suit, a plaintiff must serve expert reports for each physician or health
care provider against whom a liability claim is asserted.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(a).  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Id. ' 74.351(r)(6).  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report=s
adequacy.  See id. ' 74.351(a),
(c), (l).  A trial court must
grant a motion to dismiss based on the alleged inadequacy of an expert report
only if it finds, after a hearing, Athat the
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id. ' 74.351(l).  When a report is not served within 120 days
after suit is filed, the defendant may file a motion to dismiss the case, and
the trial court has no discretion but to dismiss the case.  Id. ' 74.351(b).








The
information in the report does not have to meet the same requirements as
evidence offered in a summary judgment proceeding or at trial, and the report
need not marshal all the plaintiff=s proof,
but it must include the expert=s
opinions on each of the elements identified in the statuteCstandard
of care, breach, and causation.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878B79 (Tex.
2001); Thomas v. Alford, 230 S.W.3d 853, 856 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).  In
detailing these elements, the supreme court has made clear that an expert
report must provide enough information to fulfill two purposes if it is to
constitute a good faith effort:  the
report must (1) inform the defendant of the specific conduct the plaintiff has
called into question and (2) provide a basis for the trial court to conclude
that the plaintiff=s claims have merit.  Palacios, 46 S.W.3d at 879; Gray v.
CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  A report
does not fulfill these two purposes if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios, 46 S.W.3d at 879.

Under
section 74.401, a person may qualify as an expert witness on the issue of
whether a physician departed from accepted standards of medical care only if
the person is a physician who

(1) is practicing medicine at the time such testimony is given or
was practicing medicine at the time the claim arose;

 

(2) has knowledge of accepted standards of medical care for the
diagnosis, care, or treatment of the illness, injury, or condition involved in
the claim; and

 

(3) is qualified on the basis of training or experience to offer
an expert opinion regarding those accepted standards of medical care.

 

Tex. Civ. Prac. & Rem. Code
Ann. ' 74.401(a)
(Vernon 2005).  In determining whether a
witness is qualified on the basis of training or experience under section
74.401(a)(3), the trial court shall consider whether, at the time the claim
arose or at the time the testimony is given, the witness (1) is board
certified or has other substantial training or experience in an area of medical
practice relevant to the claim and (2) is actively practicing medicine in
rendering medical care services relevant to the claim.  Id. ' 74.401(c).








V.  Dr. Dingler=s
Appeal

In a
single issue, Dr. Dingler argues that the trial court abused its discretion by
denying his motion to dismiss the Tuckers= health
care liability claim against him.  He
contends that the Tuckers failed to timely serve either him or his attorney of
record with Dr. Jenkins=s report because (1) he was not
served with the report at any time between the filing of the original petition
and the filing of his motion to dismiss and (2) the Tuckers= service
of Dr. Jenkins=s report upon counsel for Nocona
in November 2007 constituted service on behalf of only Nocona, not him too,
becauseCeven
though he shares attorneys with NoconaCat that point
in time, he had not been served with citation nor had he made an appearance in
the case.  The Tuckers argue that the
trial court did not abuse its discretion by denying Dr. Dingler=s motion
to dismiss because they timely served Dr. Jenkins=s report
on counsel for Nocona, who ultimately represented Dr. Dingler.








The
parties=
arguments implicate the requirement in civil practice and remedies code section
74.351(a) that a claimant Aserve on
each party or the party=s
attorney@ an expert report and curriculum
vitae not later than the 120th day after the date the original petition was
filed.  Id. ' 74.351(a)
(emphasis added).  Under the statute=s plain
language, to achieve service, service of an expert report under section
74.351(a) must be effected upon a Aparty@ or a Aparty=s
attorney.@ 
See id.  Section 74.351
does not define the term Aparty,@ but
section 74.001 states that A[a]ny
legal term or word of art used in this chapter, not otherwise defined in this
chapter, shall have such meaning as is consistent with the common law.@  Id. ' 74.001(b).  Authorities recognize that to be a Aparty@ to a
lawsuit, one generally must be named in the pleadings and either (1) be
served, (2) accept or waive service, or (3) make an appearance.  Carreras v. Zamora, No.
13-08-00307-CV, 2009 WL 2462781, at *1 (Tex. App.CCorpus
Christi Aug. 13, 2009, no pet.); Yilmaz v. McGregor, 265 S.W.3d 631, 637
(Tex. App.CHouston [1st Dist.] 2008, pet.
denied); see Tex. R. Civ. P. 124 (stating in part that in no case shall
judgment be rendered against any defendant unless upon service, acceptance or
waiver of process, or upon an appearance by the defendant); see also In re
Sloan, 214 S.W.3d 217, 221 (Tex. App.CEastland
2007, no pet.) (stating that a court acquires personal jurisdiction over a
person when a person, without legal reservation, voluntarily appears before the
court or when the person is served with process).  Merely being named in a petition as a
defendant does not make one a Aparty@ to a
lawsuit.  See Mapco, Inc. v. Carter,
817 S.W.2d 686, 687 (Tex. 1991); Yilmaz, 265 S.W.3d at 637.  Indeed, a person has no duty to participate
in proceedings if the person has not been properly served, even if the person
later becomes aware of the proceedings.  Ross
v. Nat=l Ctr. for the Employment of the
Disabled, 197 S.W.3d 795, 797B98 (Tex.
2006) (AWhile
diligence is required from properly served parties or those who have appeared,
. . . those not properly served have no duty to act, diligently or otherwise.@); Harrell
v. Mex. Cattle Co., 73 Tex. 612, 616, 11 S.W. 863, 865 (1889) (AA
defendant . . . is not bound to take action until he has
been duly served with process.@).

In this
case, the Tuckers filed their original petition on November 5, 2007, naming Dr.
Dingler as a defendant, but they did not serve Dr. Dingler with citation until
June 11, 2008.  At no point between
November 5, 2007, and June 11, 2008, did Dr. Dingler make an appearance in the
case or waive service.[2]  Therefore, although Dr. Dingler was a named
defendant in the Tuckers= original petition, he did not
become a Aparty@ to the
lawsuit until he was served with citation on June 11, 2008.  See Carreras, 2009 WL 2462781, at *1; Yilmaz,
265 S.W.3d at 637.








Dr.
Dingler argues that the Tuckers failed to comply with section 74.351(a)=s
service requirement because they did not serve either him or his attorney of
record with Dr. Jenkins=s report.  We agree. 
It is undisputed that the Tuckers never personally served Dr. Dingler
with Dr. Jenkins=s report.  Thus, they did not meet section 74.351(a)=s
service requirement by serving the Aparty@ with
the report.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(a).  The Tuckers instead argue that they complied
with section 74.351(a)=s service requirement when they
served the report on counsel for Nocona, who ultimately represented Dr.
Dingler; they thus contend that they met section 74.351(a)=s
service requirement by serving the Aparty=s
attorney@ with
the report.  For this argument to have
any merit, however, Dr. Dingler must have been a Aparty@ to the
lawsuit when Nocona was served with Dr. Jenkins=s report
because under section 74.351(a), service cannot be effected on a Aparty=s
attorney@ if the
defendant is not a Aparty.@  See id. (emphasis added).  We determined above that Dr. Dingler did not
become a Aparty@ to the
lawsuit until he was served with citation on June 11, 2008.  Therefore, because Dr. Dingler was not a Aparty@ to the
lawsuit until June 2008, he was not a Aparty@ to the
lawsuit when the Tuckers served the report on Nocona on November 26, 2007.  Because Dr. Dingler was not a Aparty@ to the
lawsuit when the Tuckers served Dr. Jenkins=s report
on Nocona in November 2007, the Tuckers= service
of the report upon Nocona did not and could not constitute service of the
report on Dr. Dingler under the Aparty=s
attorney@
language in section 74.351(a).

The
Tuckers=
argument that timely service of the report upon counsel for Nocona in November
2007 was sufficient to comply with section 74.351(a) because Nocona=s
counsel ultimately came to represent Dr. Dingler is contrary not only to
section 74.351(a)=s plain language but also to
well-established rules of civil procedure providing that a defendant has no
duty to participate in proceedings until the defendant has been served, has
accepted or waived service, or has made an appearance in the case.  See id.; Ross, 197 S.W.3d at
797B98; Harrell,
73 Tex. at 616, 11 S.W. at 865; see also Ramos v. Richardson, Nos.
13-05-00204-CV, 13-05-00205-CV, 2008 WL 1822763, at *3 (Tex. App.CCorpus
Christi Apr. 24, 2008, pet. denied) (mem. op.) (AValley
Baptist should not have been required to respond and object to a report before
it was served with the lawsuit. . . .  If a potential party were required to submit
to the trial court=s jurisdiction before being
served, it would be required to waive issues regarding jurisdiction and service
requirements.@).








The
Tuckers additionally contend that Ano fewer
than three (3) attempts were made by the post office to serve the citation on
[Dr.] Dingler@ and that this court is Aentitled
to infer that [Dr.] Dingler made a conscious decision not to claim certified
mail from the court clerk.@  Although the record appears to show that the post
office made three attempts to serve Dr. Dingler with citation, that is all it
shows.  The Tuckers have not directed us
to any evidence that Dr. Dingler avoided service or to any authority providing
that failed attempts at service ipso facto demonstrate improper avoidance of
service, and they have not explained what effect, if any, Dr. Dingler=s
alleged avoidance of service has on this specific issue.  See generally Bohannon v. Winston, 238
S.W.3d 535, 538 (Tex. App.CBeaumont
2007, no pet.) (AThe potential for gamesmanship
does not vest the courts with the power to legislate; instead, we must apply
the statute as it is written and address a party=s
misconduct in an appropriate manner when it occurs.@)

Accordingly,
as to Dr. Dingler, the Tuckers did not comply with section 74.351(a)=s
requirement that they Aserve on each party or the party=s
attorney@ an
expert report and curriculum vitae not later than the 120th day after the date
the original petition was filed.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(a).  We hold that the trial court abused its
discretion by denying Dr. Dingler=s motion
to dismiss the Tuckers= health care liability claim
against him.  We sustain Dr. Dingler=s sole
issue.

VI.  The Tuckers= Appeal








In a single
issue, the Tuckers argue that the trial court abused its discretion by
dismissing their vicarious liability claims against Nocona.  They contend that they alleged vicarious
liability against Nocona for Dr. Dingler=s
conduct; that Dr. Jenkins is qualified to render an expert opinion; and that
Dr. Jenkins=s report sufficiently set forth
the applicable standard of care, how Dr. Dingler breached the standard of care,
and how Dr. Dingler=s breach of the standard of care
caused the Tuckers= injuries.  We agree.








A
plaintiff asserting a healthcare liability claim against a principal does not
have to provide a separate expert report as to the principal when the claim is
premised on the acts of the principal=s agent
for which the plaintiff seeks to hold the principal vicariously liable.  Gardner v. U.S. Imaging, Inc., 274
S.W.3d 669, 671B72 (Tex. 2008).  In the Tuckers=
original petition, they limited the specific allegations of negligence to Dr.
Dingler=s (1) Afailure
to take proper precautions,@ (2) Adecision
to remove aspirin and Plavix from [Linda=s]
medication,@ and (3) Afailure
to provide appropriate informed consent.@  The allegations calling into question the
specific complained-of conduct are premised on the acts of only Dr. Dingler;
they did not allege any specific acts of negligence committed by Nocona in its
capacity as a principal.  Nocona
expressly recognized this; it stated in its objections to Dr. Jenkins=s
report, APlaintiffs
only assert that [Nocona] was negligent without specifying the manner of same.@  Nocona also filed special exceptions to the
petition that were directed to the allegations against Dr. Dingler.  Nocona=s
argument that the petition can only be construed to allege a theory of
direct liability against Nocona is inconsistent not only with the petition=s
unambiguous allegations limiting the claims against Nocona to vicarious
liability for Dr. Dingler=s conduct but also contrary to
the fact that NoconaCa professional entityCcannot
practice medicine.  See Moheb v.
Harvey, No. 09-08-00260-CV, 2008 WL 5501166, at *9 (Tex. App.CBeaumont
Jan. 15, 2009, no pet.) (mem. op.).

Further,
the Tuckers filed an amended petition specifically alleging vicarious
liability, presumably to clarify its allegations.  The certificate of service certifies that the
petition was served on counsel for Nocona on August 26, the same day the trial
court heard arguments on the motions to dismiss, and Nocona never filed a
motion to strike the amended pleading. 
Nor did Nocona miss an opportunity to assert objections to Dr. Jenkins=s report
on the basis of the Tuckers=
vicarious liability claims; it had previously asserted objections to the report
as to the vicarious liability claims, which the trial court must have
considered in ruling on the objections. 
The Tuckers pleaded vicarious liability.








Nocona
objected to Dr. Jenkins=s qualifications to render an
expert opinion as to whether Dr. Dingler departed from the applicable accepted
standards of care.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.401(a).  Nocona also objected that Dr. Jenkins is not
qualified to render an expert opinion because he is a pulmonary specialist, not
a cardiologist.  Dr. Jenkins=s report
states in relevant part as follows:

I am a physician in private practice in San Antonio, Texas.  I am Board Certified in Internal Medicine and
Pulmonary Disease.  I see approximately
200 patients each month, half or more are over age fifty.  It is common that my patients have been
treated for coronary disease including angioplasty and stent placement.  Many of these patients have additional
illnesses including diabetes, high blood pressure, high cholesterol and
anemia.  In brief, my patients have
conditions that are consistent with those manifested by [Linda] while she was
under the care of Dr. Dingler.  I
consider myself qualified by education, training and experience to provide this
report.

 

. . . .

 

It is within common medical knowledge, including
that which should be known by internists, that medicines that decrease clotting
by decreasing platelet function . . . are needed when stents are placed.  Stopping these agents increases the risk of
clot forming in the stent.  This
knowledge was available prior to 2005 . . . .

 

 








The
report demonstrates that Dr. Jenkins meets each of the requirements identified
in section 74.401(a)Che was practicing medicine; he
had knowledge of accepted standards of medical care for the treatment, care, or
injury involved in the claim; and he was qualified on the basis of training or
experience to opine on the standard of care. 
See id.  As for Nocona=s
argument that Dr. Jenkins does not specialize in the same field as Dr. Dingler,
in delineating the statutory qualifications for a chapter 74 expert, the
statute does not focus on the defendant physician=s area
of expertise but on the condition involved in the claim.  See id. ' 74.401(a)(2)
(requiring expert to have Aknowledge
of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim@ (emphasis
added)), ' 74.401(c)(1), (2)
(recognizing an expert may be qualified on the basis of training or experience
if he or she is board certified or is practicing Ain an
area of medical practice relevant to the claim@
(emphasis added)).  That is, the applicable
Astandard
of care@ and an
expert=s
ability to opine on it is dictated by the medical condition involved in the
claim and by the expert=s familiarity and experience
with that condition.  See Granbury
Minor Emergency Clinic v. Thiel, No. 02-08-00467-CV, 2009 WL
2751026, at *4 (Tex. App.CFort Worth Aug. 27, 2009, no
pet.); McKowen v. Ragston, 263 S.W.3d 157, 162 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (permitting infectious disease physician to opine on
standard of care for treating infection stemming from AV graft even though
defendant doctor was cardiothoracic surgeon); Blan v. Ali, 7 S.W.3d 741,
746B47 &
n.3 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).








Here,
Dr. Jenkins stated that the hundreds of patients he sees each month have
conditions that are consistent with the conditions manifested by Linda while
she was under Dr. Dingler=s care.  Dr. Jenkins thus has familiarity and
experience with the conditions involved in the claim.  He is not unqualified to render an opinion in
this case simply because he is a pulmonary specialist and not a
cardiologist.  In light of this and the
above, Dr. Jenkins demonstrated that he is qualified to opine on the issue of
whether Dr. Dingler departed from the accepted standards of care in the case.

Nocona
further objected that Dr. Jenkins=s report
failed to set out a fair summary of the applicable standard of care, how Dr.
Dingler breached the standard of care, and how Dr. Dingler=s breach
of the standard of care caused Linda=s
injuries.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(r)(6).  Dr. Jenkins=s report
states in relevant part as follows:

The incident in question came to light on 10-26-05 when [Linda] was
admitted to Nocona General Hospital under the care of Dr. Chance Dingler with
chest pain. . . .  Cardiac
catheterization by Dr. Desire showed a clot at the site of the stent
placement.  This clot was successfully
removed by Dr. Desire[.]

 

The clot had formed at the site of a drug eluting
coronary stent that was placed by Dr. Desire in August, 2005.  As part of the treatment plan for the
coronary stent, aspirin and Plavix (clopidogrel) had been given to protect the
stent by preventing blood clots.  The
aspirin and Plavix had been [inadvertently] stopped for the intestinal
evaluation.  That these should not
have been discontinued is admitted in the records . . . .

 

. . . .

The heart attack of 10-26-05 was caused by clot
in the previously placed coronary stent. 
The formation of this clot was due to the withdrawal of aspirin and
Plavix.

 

. . . .








The relevant standard of care required that Dr.
Dingler be aware of the need for appropriate medication and the consequences of
discontinuing the medicine.  In failing
to recognize the need to protect the coronary stent with medication, and in stopping
the medication, Dr. Dingler breached the required standard of care.  This failure resulted in a heart attack with
hospitalization, treatment for low blood pressure and pulmonary edema.

 

Dr. Dingler also breached the standard of care in
failing to inform [Linda] of alternatives, risks and benefits and thus failed
to obtain informed consent.  There were
alternative processes available.  These
included anticoagulation with heparin during the time when medication was
discontinued, coordinating with the endoscopist to limit the procedures to
inspection only without biopsy, or avoiding the endoscopic procedures
altogether since the risk of a heart attack was greater than the risk of
anemia.  Dr. Dingler did not inform
[Linda] of the alternatives and the associated risks and benefits.  The standard of care required that [Linda] be
informed of those alternatives, risks and benefits.  Since [Linda] was not informed of these
issues, informed consent was not provided.

 

 








Dr.
Jenkins=s report
accordingly identified the applicable standards of care (awareness of the need
for appropriate medication and the consequences of discontinuing the medicine
and informing Linda of the alternatives, risks, and benefits regarding
discontinuing medication); how Dr. Dingler breached the standard of care
(failing to recognize the need to protect the coronary stent with medication,
stopping the medication, and failing to inform Linda of medicinal
alternatives); and how Dr. Dingler=s breach
caused Linda=s injuries (failing to abide by
the applicable standard of care caused Linda to have the heart attack).  See id.  The report also links Dr. Dingler=s
purported breach of the applicable standards of care to Linda=s
alleged injuries.  Dr. Jenkins=s report
represents an objective good faith effort to comply with the definition of an
expert report in section 74.351(r)(6).  See
id. ' 74.351(l).

Nocona
argues that the Tuckers failed to sufficiently attack on appeal an independent
ground that supports the trial court=s
judgmentCthe sufficiency
of Dr. Jenkins=s report as it pertains to Dr.
DinglerCand that
we are consequently compelled to affirm the trial court=s order
on this ground.  See Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Midway Nat=l Bank
of Grand Prairie, Tex. v. W. Tex. Wholesale Supply Co., 453
S.W.2d 460B61 (Tex. 1970); Britton v.
Tex. Dep=t of Criminal Justice, 95
S.W.3d 676, 681B82 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  However, the
Tuckers raised the issue of the sufficiency of the report in their briefing and
included supporting argument relevant thereto. 
See Tex. R. App. P. 38.1(I). 
Thus, they did not fail to assign error to an independent ground that
supports the trial court=s order.

We hold
that the trial court abused its discretion by sustaining Nocona=s
objections to Dr. Jenkins=s report as it pertained to Dr.
Dingler and by granting Nocona=s motion
to dismiss to the extent it sought dismissal of the Tuckers= claims
against Nocona based on a theory of vicarious liability.  We sustain the Tuckers= sole
issue.

 








VII.  Conclusion

Having
sustained Dr. Dingler=s only issue, we reverse the
trial court=s order denying his motion to
dismiss and remand to the trial court with instructions to enter an order
dismissing the Tuckers= health care liability claim
against Dr. Dingler, with prejudice, and awarding reasonable attorney=s fees
and court costs.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(b).  Having sustained the Tuckers= issue
complaining about the trial court=s order
sustaining Nocona=s objections to Dr. Jenkins=s report
as it pertained to Dr. Dingler and dismissing their vicarious liability claims
against Nocona, we reverse the trial court=s order
granting Nocona=s motion to dismiss on the basis
of the Tuckers= vicarious liability claims and
remand the case to the trial court for further proceedings.

 

BILL MEIER

JUSTICE

 

PANEL:  LIVINGSTON, MCCOY, and
MEIER, JJ.

 

LIVINGSTON, J. filed a concurring and dissenting opinion.

 

DELIVERED:  November 19, 2009



 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-09-002-CV

 

 

CHANCE W. DINGLER, M.D.                                                  APPELLANT

 

                                                   V.

 

LINDA DIANE TUCKER AND                                                   APPELLEES

MYRLE TUCKER

 

                                                 AND

 

LINDA DIANE TUCKER AND                                                 APPELLANTS

MYRLE TUCKER

 

V.

 

NOCONA MEDICAL CLINIC, P.A.                                              APPELLEE

 

                                              ------------

 

           FROM
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                 CONCURRING AND DISSENTING
OPINION

 

                                              ------------

I
respectfully dissent to Part V of the majority opinion, which relates only to
Dr. Dingler=s appeal.  In all other respects, I join the majority
decision.








I
believe that once Dr. Dingler became a party to the suitCwhen he
was served with citationChe was served with the expert
report that same day because the attorneys who actually represent him in this
litigation had already been served with the report on behalf of Nocona.  While Dr. Dingler was not an actual Aparty@ to the
suit until June 11, 2008, when he was finally served with citation, the service
of the expert report on Nocona=s and Dr.
Dingler=s mutual
attorneys, which had occurred previously, ripened as to Dr. Dingler on the day
he became a party.[1]  In other words, as to Dr. Dingler, it was a
prematurely served report, but once service on Dr. Dingler was perfected, so
too was service of the expert report. 
Furthermore, Dr. Dingler was a named defendant from the beginning of the
suit so that the preclaim fact patterns that occurred in Carrick v. Summers
and St. Luke=s Episcopal Hospital v. Poland do not
apply.  Carrick, No. 09-09-00166-CV,
2009 WL 2616505, at *2B4 (Tex. App.CBeaumont
Aug. 27, 2009, no pet.); Poland, 288 S.W.3d 38, 43B44 (Tex.
App.CHouston
[1st Dist.] 2009, pet. filed).[2]








Because
the expert report was timely served, I do not believe Dr. Dingler should be
dismissed from the suit.  To hold
otherwise allows the plaintiff no time after service of the suit on a
later-served party within which to serve an expert report, which would result
in a plaintiff=s loss of access to the courts
as to that potential defendant.  See Tex.
Const. art. I, ' 13; Gard v. Bandera County
Appraisal Dist., No. 04-08-00802-CV, 2009 WL 1227818, at *3 (Tex. App.CSan
Antonio May 6, 2009, no pet.). 
Furthermore, we should not adopt a policy that rewards a potential
defendant who is good at evading service of citation for more than the first
120 days after a suit is filed.

Therefore,
I would conclude and hold that the duty to serve the report cannot begin to run
until the particular defendant has been made a party and, in this particular
case, would hold that Dr. Dingler=s
counsel was timely served with the expert report.

 

TERRIE LIVINGSTON

JUSTICE

 

DELIVERED:  November 19, 2009











[1]In July 2008, Nocona and
Dr. Dingler filed a ADefendants= Notice of Firm Name
Change,@ stating Athat, as of June 20,
2008, the firm of Wallach, Andrews & Stouffer, P.C., officially became
Wallach & Andrews, P.C.  The address,
telephone numbers, and emails will remain the same.@





[2]We notice that three of
Nocona=s filingsCits original answer,
objections to the Tuckers= expert report, and
special exceptions to the Tuckers= original petitionCcontain the designation AAttorneys for Defendant
Dingler@ or AAttorneys for Defendant
Len Dingler, M.D.@ in the signature
block.  The substance of the filings demonstrate
that they are made on behalf of only Nocona. 
Dr. Dingler did not make an appearance in the caseCand thus become a party
to the suitCas a result of Nocona=s three filings
containing these designations in the signature block.   





[1]Nocona accepted service of citation by certified mail, but Dr. Dingler
did not, and it took over 120 days to serve him personally.





[2]The Tuckers filed suit against Dr. Dingler and Nocona on November 5,
2007.  They served Nocona by certified
mail on November 6, 2007, and Nocona filed its answer on November 26, 2007, the
same day that the Tuckers served their expert report on its attorney.  The attempted service by certified mail on
Dr. Dingler was returned by the post office marked Aunclaimed@ after several attempts
to serve it.  Dr. Dingler was finally
served with citation by personal service on June 11, 2008.