**In re Hondo Lance SLOAN, Relator.**

**No. 11–06–00315–CV.**

Court of Appeals of Texas, Eastland.

Feb. 8, 2007.

**218**

David Norris DeFoore, Abilene, for relator.

David C. Hall, Lance Hall, Hall & Hall, L.L.P., Sweetwater, Burt L. Burnett, Burnett & Burke, LLP, Abilene, for real parties in interest.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

Finding that Hondo Lance Sloan had violated temporary orders in a divorce case, the trial court placed him in the Jones County Jail for 180 days for criminal contempt and 180 days for civil contempt. Hondo filed a petition for a writ of habeas corpus in this court seeking to have Judge Hagler's orders declared void. We previously ordered that Hondo be released pending final action on this writ. We order his unconditional release and also order him released from the conditions of the bond previously set on temporary orders by this court.

Stacey (Kline) Sloan sued Hondo for divorce on June 30, 2006. There is a dispute as to whether they were ever married. On July 7, 2006, Stacey filed an unsworn motion for substituted service. She attached two documents to her motion: an affidavit, also dated July 7, 2006, from Chuck Horton regarding his attempts to serve the petition for divorce upon Hondo in Hawley and an unsworn statement from the Chief of Police of Hawley stating that Hondo's mother had told him that Hondo was working in Iraq at the time. She also informed him that Hondo would be in Iraq until January 2007.

Also on July 7, 2006, the trial court ordered that substituted service would be

proper and could be accomplished by leaving a copy of the citation and accompanying documents with anyone sixteen years of age or older at Hondo's mother's house in New Mexico. A copy of the citation, of the temporary restraining order, of the order on substituted service, of the order extending the temporary restraining order and notice of hearing, of the notice of hearing on the application for protective order, and of the petition were left there with Hondo's stepfather on July 27, 2006. The returns of the service of the citations and notices were not filed in Jones County until September 8, 2006.

On August 3, 2006, approximately one month before the returns were filed, the trial court heard Stacey's motion for temporary orders and protective order. Although the original petition and motion for substituted service had been signed by Burt L. Burnett, an attorney from Abilene, as Stacey's attorney, Johnny Morris Moore II, an attorney from Sweetwater, substituted as Stacey's attorney at the temporary hearing. The record reflects that Stacey appeared at the hearing. There were no other appearances.

No testimony was taken at the hearing on temporary orders. Rather, the following occurred:

> Judge Hagler [addressing Mr. Moore]: If you would, just ask—state for the record what relief it is you're requesting today.

Moore responded by telling the trial court what Stacey wanted. The trial court entered its oral order in accordance with that request and also ordered that the temporary restraining order become a temporary injunction. The trial court also orally ordered that Hondo deliver a Dodge pickup and a stock trailer to Stacey by noon on August 5, 2006. Stacey was also awarded all horses in her possession; interim attorney's fees of $7,500, plus all court costs; spousal support in the amount of $3,500 per month, beginning August 7, 2006; and "retro" spousal support in the amount of $4,000. The trial court also extended the protective order. Moore offered "approximately 11 to 12 videotapes" in response to the trial court's question, "Did you need to tender any evidence at this time?" The trial court admitted the videotapes; they are not a part of the record in this case. Additional specific details of the trial court's order were added to the written order signed by the trial court on August 16, 2006.

Hondo filed a special appearance as well as a plea in abatement on August 14, 2006. It appears that neither of those were heard. Those matters are not made the subject of this application for a writ of habeas corpus, and we mention them only in order to present a correct timeline of events. On that same date, Hondo also filed an answer and a counter petition subject to his special appearance and plea in abatement. On August 25, 2006, Hondo filed a motion to vacate or modify the temporary orders. The motion was heard on September 8, 2006.

Harry J. Fisk, an attorney who was hired according to Hondo by Hondo's parents, appeared at the hearing on the motion to vacate. Hondo was present at the hearing as was Stacey. Burnett was also present as Stacey's attorney. In his motion, Hondo claimed that the purported service of citation was defective; that the parties had never been married; and, among other things, that the temporary orders were unreasonable. He also sought sanctions.

Hondo testified at the September 8 hearing. He testified that he lived in Sierra Vista, Arizona, but that he had worked as a security technician in Iraq for two and one-half years. He used his mother's address in New Mexico for his mail. Stacey

was aware that he was in Iraq when the papers were served in New Mexico. Hondo had visited Stacey in Hawley for a few days in June, went to Arizona and New Mexico, and returned to Iraq on the 17th or 18th of June. The day after the citation was delivered in New Mexico, Hondo's mother contacted him by telephone in Iraq and told him, "You got these papers." It is unclear from the record just when Hondo knew the details of "the papers." He authorized Fisk to file the various pleadings on his behalf.

Fisk attempted to call Stacey as a witness, but the trial court sustained an objection by Burnett that it would be "just to harass her." The trial court ruled that the question of whether there was a valid marriage was not an issue at the hearing on the motion to vacate, but that the question ultimately would be resolved apparently in the final hearing. There was no further testimony.

At the conclusion of the hearing, the trial court said:

I find that the service was proper. Because service was proper we had—I think that the law allowed us to have a temporary hearing, which I heard evidence for some period of time on that August the 3rd, and I ruled according to the evidence presented to me.

The Court finds that the Respondent was aware of the proceedings against him prior to the time of that hearing, and whether or not he showed up here I—you know, that's up to the Respondent and you, Mr. Fisk. And so service was proper in that regard. And, in that sense, my temporary orders are going to remain in effect. . . . I expect my orders to be followed, and I'm setting a compliance hearing for next Friday afternoon at one o'clock.

After some scheduling discussions, the "compliance" hearing was moved to September 15, 2006, and Hondo was ordered to be present unless a "Rule 11 Agreement has been signed by both counsel saying that the order's been complied with."

The trial court again stated its ruling that it found that service was proper "according to laws of the State of Texas." On September 14, 2006, the trial court entered its written order denying Hondo's motion.

The trial court conducted the "compliance" hearing as scheduled on September 15. Burnett appeared for Stacey. David N. DeFoore, an attorney from Abilene, had joined Fisk as Hondo's attorney; and they both appeared. There was no testimony taken at this hearing. The trial court asked Burnett what he believed the status to be in connection with "compliance of the orders." Burnett informed him, basically, of the ways in which he claimed that Hondo had failed to comply with the temporary orders. DeFoore was given the opportunity to and did respond. He responded that Hondo could not have delivered property to Stacey while he was in Iraq. He also advised the trial court that Hondo was willing to and intended to pay the amounts ordered but that he had only $1,500, which he was ready to pay at the time.

After a response from Burnett, the trial court made the following announcement:

At this time, Mr. Hondo, I am finding you in criminal contempt of court in regards to each specific allegation of failure to pay the ordered temporary spousal support in the amount of $3500 on August the 7th and September the 7th.

I'm finding that you have specifically violated the Court's order in regards to failure to pay the court-ordered retroactive [spousal] support in the amount of $4,000.

I'm finding you—that you specifically violated the court order by failing to voluntarily return the Dodge Ram vehicle.

I'm finding that you specifically violated the court order for failure to return the trailer.

And I'm finding that you violated the court order when you failed to follow the Court's order and enumerate [sic] Mrs. Sloan $7,500 to Mr. Burnett for court-ordered interim attorney's fees.

This is a—you're being found in criminal contempt. I'm sentencing you to 180 days on each violation. This sentence will run concurrently. Furthermore, I'm making a specific finding that you were able and capable of complying with the court order.

I'm finding you also in civil contempt, and I'm ordering that you remain in the confines of the county jail until such time that you comply with the court order.

After informing the parties that it might later consider "some type of probation of this sentence" if Hondo complied with the order, the trial court ordered a Deputy to "take him into custody." Later the same day, the trial court entered its written order expanding on the details of its oral pronouncement.

Hondo presents four issues in support of his application for writ of habeas corpus. First, he argues that service of process was defective. Secondly, he contends that any notice of contempt as required by due process, was incomplete and ambiguous in connection with the "compliance" hearing. Next, Hondo claims that the order holding him in contempt and committing him to jail is void because he was found in contempt for actions occurring prior to the time that the trial court entered its written temporary orders. Finally, he makes the complaint that one punishment was assessed for more than one act of contempt and that one act occurred before the trial court entered its written temporary orders.

■■■ An original habeas corpus proceeding in which an attack is made upon a contempt judgment is a collateral attack on the judgment. *In re Mann,* 162 S.W.3d 429 (Tex.App.-Fort Worth 2005, orig. proceeding). Unlike those appeals challenging default judgments, this is not a direct appeal but is an original proceeding collaterally challenging Judge Hagler's orders. This is an important distinction because in a direct appeal we do not presume that issuance, service, and return of citation are valid. *Uvalde Country Club v. Martin Linen Supply Co.,* 690 S.W.2d 884 (Tex. 1985). We do entertain that presumption when the attack is collateral. *In re Parr,* 199 S.W.3d 457 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

■■■ When challenging a contempt order, the burden is upon the one seeking a writ of habeas corpus to show that the contempt order is void. *Id.* We may order Hondo's release only if he shows that the order about which he complains is void because of a lack of jurisdiction or that the trial court ordered his confinement without affording him due process. *Id.* at 460.

■■■ Jurisdiction consists of two elements: (1) subject-matter jurisdiction and (2) personal jurisdiction. *Id.* A court acquires personal jurisdiction when a person, without legal reservation, voluntarily appears before the court or when the person is served with process in accordance with required procedures in accordance with due process. *Id.* at 461. A defendant must be amenable to the jurisdiction of the court, and that jurisdiction must be invoked by valid service of process. *Coronado v. Norman,* 111 S.W.3d 838, 841 (Tex. App.-Eastland 2003, pet. denied). At this

point, we are not asked to decide questions regarding subject-matter jurisdiction.

■■■ Whether a court has personal jurisdiction in a particular matter is a question of law. *Coronado,* 111 S.W.3d at 838. The correct standard of review is do novo. *Id.* at 842.

Hondo was not personally served in this case. Rather, substituted service was attempted by serving his stepfather in New Mexico.

A party who seeks to serve another by a means other than personal service must follow the requirements set out in Tex.R. Civ. P. 106(b). Rule 106(b) provides:

> (b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service
>
> > (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or
> >
> > (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex.R. Civ. P. 106(a)(1) requires personal delivery to a defendant while Tex.R. Civ. P. 106(a)(2) provides a process for service by mail. Neither of those occurred in this case.

■■■ Thus, to obtain substituted service under Rule 106(b), the one seeking such service must file a motion supported by affidavit showing the location of the defen-

dant's usual place of business or usual place of abode (or other place where the defendant can probably be found). The affidavit also must contain statements of fact that show specifically the unsuccessful attempts at personal or mailed service at the place named in the affidavit. Upon a proper showing, the court may then order substituted service in accordance with Rule 106(b)(1) or 106(b)(2).

■■■ An affidavit will not support substituted service if it is conclusory or otherwise insufficient. *See Wilson v. Dunn,* 800 S.W.2d 833, 836 (Tex.1990). The affidavit in this case was signed by Horton on July 7, 2006. Horton stated that he attempted to serve Hondo at 2000 P.R. 316 in Hawley "on three separate occasions." Horton continued, "Hondo Lance Sloan has been unavailable for service, has refused to appear and has avoided for service of Original Petition for Divorce." There is no mention of service of the temporary restraining order, the protective order, or a notice of hearing. Other than Horton's statement that he attempted to serve Hondo at 2000 P.R. 316 in Hawley three times, there is nothing anywhere in the affidavit that detailed his efforts at service. He did not state the dates or the times when the service was attempted and neither did he give any other details regarding that address as being Hondo's usual place of abode. An unsworn statement signed by Chief Windham, the Hawley Chief of Police, was attached as an exhibit to the motion for substituted service. In that statement, Chief Windham stated that Hondo had told him that he was in Iraq and that his mother would be picking up some of his property. However, as far as this issue is concerned, we will confine our review of the affidavit to the contents of the affidavit.

This is not the first time that this court has been presented with this type of affi-

davit. In *Mackie Construction,* the officer stated in his affidavit that he had made "numerous attempts" to serve the defendant and that the "[d]efendant seems to be avoiding service." This court held that the affidavit lacked the specificity required by TEX.R. CIV. P. 106. The affiant did not state "specifically the facts" surrounding the attempts as required by the rule. *Mackie Constr. Co. v. Carpet Servs., Inc.,* 645 S.W.2d 594, 596 (Tex.App.-Eastland 1982, no writ). Here, the affiant did not state the times at which he attempted to serve Hondo. The affidavit does not contain information that the address named in the affidavit is even Hondo's usual place of abode. Further, as far as the remainder of the affidavit is concerned, it contains no more than conclusory language.

■ Stacey argues that it matters not about the imperfections in the affidavit because Hondo voluntarily appeared when he presented his motion to vacate the temporary order. Voluntary appearance is not retroactive. We have not been called upon to decide more than that at this time. She also argues that Hondo had actual knowledge of the proceedings and that any problems with the service are therefore meaningless. Although there might well be multiple problems with notice in this case, we are not addressing questions relating to notice; we are addressing the acquisition of personal jurisdiction by appropriate service of process. That did not happen before the temporary orders were entered. In a direct appeal to set aside a default judgment, actual notice, without service, is not sufficient to confer jurisdiction upon a trial court. *Wilson,* 800 S.W.2d at 836. Although the burden of coming forward with evidence is different in direct appeals from that in default judgments and in original proceedings in which a judgment or order is collaterally attacked, we believe that the effect of actual

notice is the same in either case; it does not confer personal jurisdiction.

It is clear from the cited authorities that, if service of process is improper and if no voluntary appearances have been made, then the trial court has no personal jurisdiction and any orders entered by it are void. It is equally as clear that Hondo has met his burden to show that the affidavit in this case falls short of the bare minimum necessary to the type of personal service that would result in the acquisition of personal jurisdiction.

Stacey also maintains that a portion of the confinement assessed against Hondo was in connection with direct attempt as opposed to constructive contempt. At the hearing to vacate the orders of the trial court, Burnett asked Hondo, on cross-examination, whether he was going to pay the money as ordered. Perhaps unwisely, Hondo at first stated that he was not going to pay as ordered because he was not married. In the same series of questions, Hondo finally told Burnett, "I guess I'm going to have to [pay] because if I don't, you're going to throw me in jail and I'll lose my job." On appeal, Stacey argues that a portion of the confinement was related to this attitude and various similar statements made by Hondo and that any problems with service do not affect this portion of the commitment. We do not agree. An examination of Judge Hagler's order shows that Hondo is being held in direct contempt for not doing those things ordered in the temporary orders entered by the trial court, not for things Hondo did or said during the hearing.

While we are not at all unsympathetic with Hondo's other claims, in view of our holding regarding jurisdiction, we need not discuss Hondo's being deprived of his liberty without due process of law arising from a lack of proper notice, as well as for other reasons. Nor is it necessary to con-

sider Hondo's retroactive contempt claims in which he says that Judge Hagler held him in contempt and ordered him confined for failure to take certain actions by a date that had already passed prior to the time that the trial court ordered that he take those actions.

 Because the affidavit wholly failed to support the motion for substituted service, the trial court never acquired personal service over Hondo. Because they are void, we set aside the trial court's temporary orders in this case, as well as any orders of contempt and commitment based upon the temporary orders. Hondo legally cannot be held in contempt for violating a void order. *Ex parte Shaffer,* 649 S.W.2d 300, 301–02 (Tex.1983); *Ex parte Lillard,* 159 Tex. 18, 314 S.W.2d 800 (1958). We grant Hondo Lance Sloan's request for a writ of habeas corpus and order his release from confinement and from all obligations related to his confinement.