

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-002-CV


CHANCE W. DINGLER, M.D.                                          APPELLANT

V.

LINDA DIANE TUCKER AND                                          APPELLEES
MYRLE TUCKER

AND

LINDA DIANE TUCKER AND                                          APPELLANTS
MYRLE TUCKER

V.

NOCONA MEDICAL CLINIC, P.A.                                      APPELLEE

------------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

In these accelerated, interlocutory appeals, Appellant Chance W. Dingler, M.D. appeals the trial court's order denying his motion to dismiss the health care liability claims of Appellees Linda Diane Tucker and Myrle Tucker, and the Tuckers as Appellants appeal the trial court's order dismissing their health care liability claims against Appellee Nocona Medical Clinic, P.A. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2009). We will reverse both appeals.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Tuckers filed their original petition on November 5, 2007, alleging health care liability claims against Dr. Dingler and Nocona. Specifically, they alleged that in July or August 2005, Linda's cardiologist placed in her a drug eluting coronary stent. A few months later, Dr. Dingler—against the direction of the cardiologist—stopped Linda's aspirin and Plavix medications in anticipation of performing a gastrointestinal examination. Shortly after Dr. Dingler directed Linda to stop taking aspirin and Plavix, she was admitted to the hospital, complaining of chest pains; an EKG and blood tests confirmed that she had suffered an acute myocardial infarction, or heart attack. The Tuckers alleged that Linda sustained bodily injuries and damages as a direct and proximate result of Dr. Dingler's and Nocona's negligence.

2

The Tuckers served Nocona with citation by certified mail on November 6, 2007. They also attempted to serve Dr. Dingler with citation by certified mail; but the citation, which issued November 5, 2007, was returned unclaimed after the post office made several attempts to serve it.

Nocona filed its original answer on November 26, 2007. D. Michael Wallach of the law firm of Wallach, Andrews, and Stouffer, P.C. signed the answer on behalf of Nocona.

On November 26, 2007, within 120 days of filing suit, the Tuckers served Michael Wallach with the expert report and curriculum vitae of Douglas W. Jenkins, M.D. Nocona timely filed objections to Dr. Jenkins's report on December 18, 2007, objecting that the report failed to set forth Dr. Jenkins's qualifications to opine on the standard of care for a health care provider like Nocona and that the report failed to identify the applicable standard of care, how Nocona breached the standard of care, and how Nocona's breach of the standard of care caused the Tuckers' injuries. To the extent the Tuckers sought to impose vicarious liability on Nocona for the alleged acts or omissions of Dr. Dingler, Nocona made the same objections to the report as it pertained to Dr. Dingler. On June 6, 2008, Nocona filed a motion to dismiss the Tuckers' claims.

On June 11, 2008, approximately seven months after the Tuckers filed the lawsuit, they served Dr. Dingler with citation by personal service. On July 7, 2008, Dr. Dingler filed his original answer. Jennifer M. Andrews of the law firm of Wallach & Andrews, P.C., the same law firm representing Nocona,[1] signed the answer on behalf of Dr. Dingler. The Tuckers never personally served Dr. Dingler with Dr. Jenkins's report—either before or after service of citation. Dr. Dingler filed a motion to dismiss the Tuckers' claims on the ground that the Tuckers had failed to comply with civil practice and remedies code section 74.351(a) by failing to serve either him or his attorneys with an expert report within 120 days after the date the original petition was filed.

The Tuckers state that they filed a first amended original petition on August 26, 2008, the same day the trial court conducted a hearing on Dr. Dingler's and Nocona's objections and motions to dismiss. The amended petition included an allegation that Nocona was vicariously liable for the actions or inactions of Dr. Dingler. The trial court later signed its orders denying Dr. Dingler's motion to dismiss but sustaining Nocona's objections to Dr. Jenkins's report and granting its motion to dismiss. These appeals followed.

---

[1] In July 2008, Nocona and Dr. Dingler filed a "Defendants' Notice of Firm Name Change," stating "that, as of June 20, 2008, the firm of Wallach, Andrews & Stouffer, P.C., officially became Wallach & Andrews, P.C. The address, telephone numbers, and emails will remain the same."

## III. STANDARD OF REVIEW

We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)). We may not substitute our judgment for the trial court's judgment. *Id*. Nor can we determine that the trial court abused its discretion merely because we would have decided the matter differently. *Downer*, 701 S.W.2d at 242.

## IV. EXPERT REPORT REQUIREMENTS

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id*.

5

§ 74.351(r)(6). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *See id*. § 74.351(a), (c), (*l*). A trial court must grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, "that the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id*. § 74.351(*l*). When a report is not served within 120 days after suit is filed, the defendant may file a motion to dismiss the case, and the trial court has no discretion but to dismiss the case. *Id*. § 74.351(b).

The information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute — standard of care, breach, and causation. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Thomas v. Alford*, 230 S.W.3d 853, 856 (Tex. App. — Houston [14th Dist.] 2007, no pet.). In detailing these elements, the supreme court has made clear that an expert report must provide enough information to fulfill two purposes if it is to constitute a good faith effort: the report must (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to

6

conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A report does not fulfill these two purposes if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879.

Under section 74.401, a person may qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care only if the person is a physician who

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a) (Vernon 2005). In determining whether a witness is qualified on the basis of training or experience under section 74.401(a)(3), the trial court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id*. § 74.401(c).

7

## V. DR. DINGLER'S APPEAL

In a single issue, Dr. Dingler argues that the trial court abused its discretion by denying his motion to dismiss the Tuckers' health care liability claim against him. He contends that the Tuckers failed to timely serve either him or his attorney of record with Dr. Jenkins's report because (1) he was not served with the report at any time between the filing of the original petition and the filing of his motion to dismiss and (2) the Tuckers' service of Dr. Jenkins's report upon counsel for Nocona in November 2007 constituted service on behalf of only Nocona, not him too, because—even though he shares attorneys with Nocona—at that point in time, he had not been served with citation nor had he made an appearance in the case. The Tuckers argue that the trial court did not abuse its discretion by denying Dr. Dingler's motion to dismiss because they timely served Dr. Jenkins's report on counsel for Nocona, who ultimately represented Dr. Dingler.

The parties' arguments implicate the requirement in civil practice and remedies code section 74.351(a) that a claimant "*serve on each party or the party's attorney*" an expert report and curriculum vitae not later than the 120th day after the date the original petition was filed. *Id*. § 74.351(a) (emphasis added). Under the statute's plain language, to achieve service, service of an expert report under section 74.351(a) must be effected upon a "party" or a

8

"party's attorney." *See id*. Section 74.351 does not define the term "party," but section 74.001 states that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." *Id*. § 74.001(b). Authorities recognize that to be a "party" to a lawsuit, one generally must be named in the pleadings *and* either (1) be served, (2) accept or waive service, or (3) make an appearance. *Carreras v. Zamora*, No. 13-08-00307-CV, 2009 WL 2462781, at \*1 (Tex. App.—Corpus Christi Aug. 13, 2009, no pet.); *Yilmaz v. McGregor*, 265 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see* Tex. R. Civ. P. 124 (stating in part that in no case shall judgment be rendered against any defendant unless upon service, acceptance or waiver of process, or upon an appearance by the defendant); *see also In re Sloan*, 214 S.W.3d 217, 221 (Tex. App.—Eastland 2007, no pet.) (stating that a court acquires personal jurisdiction over a person when a person, without legal reservation, voluntarily appears before the court or when the person is served with process). Merely being named in a petition as a defendant does not make one a "party" to a lawsuit. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991); *Yilmaz*, 265 S.W.3d at 637. Indeed, a person has no duty to participate in proceedings if the person has not been properly served, even if the person later becomes aware of the proceedings. *Ross v. Nat'l Ctr. for the Employment of*

9

*the Disabled*, 197 S.W.3d 795, 797–98 (Tex. 2006) ("While diligence is required from properly served parties or those who have appeared, . . . those not properly served have no duty to act, diligently or otherwise."); *Harrell v. Mex. Cattle Co.*, 73 Tex. 612, 616, 11 S.W. 863, 865 (1889) ("A defendant . . . is not bound to take action until he has been duly served with process.").

In this case, the Tuckers filed their original petition on November 5, 2007, naming Dr. Dingler as a defendant, but they did not serve Dr. Dingler with citation until June 11, 2008. At no point between November 5, 2007, and June 11, 2008, did Dr. Dingler make an appearance in the case or waive service.[2] Therefore, although Dr. Dingler was a named defendant in the Tuckers' original petition, he did not become a "party" to the lawsuit until he was served with citation on June 11, 2008. *See Carreras*, 2009 WL 2462781, at *1; *Yilmaz*, 265 S.W.3d at 637.

---

[2] We notice that three of Nocona's filings—its original answer, objections to the Tuckers' expert report, and special exceptions to the Tuckers' original petition—contain the designation "Attorneys for Defendant Dingler" or "Attorneys for Defendant Len Dingler, M.D." in the signature block. The substance of the filings demonstrate that they are made on behalf of only Nocona. Dr. Dingler did not make an appearance in the case—and thus become a party to the suit—as a result of Nocona's three filings containing these designations in the signature block.

Dr. Dingler argues that the Tuckers failed to comply with section 74.351(a)'s service requirement because they did not serve either him or his attorney of record with Dr. Jenkins's report. We agree. It is undisputed that the Tuckers never personally served Dr. Dingler with Dr. Jenkins's report. Thus, they did not meet section 74.351(a)'s service requirement by serving the "party" with the report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The Tuckers instead argue that they complied with section 74.351(a)'s service requirement when they served the report on counsel for Nocona, who ultimately represented Dr. Dingler; they thus contend that they met section 74.351(a)'s service requirement by serving the "party's attorney" with the report. For this argument to have any merit, however, Dr. Dingler must have been a "party" to the lawsuit when Nocona was served with Dr. Jenkins's report because under section 74.351(a), service cannot be effected on a "*party's* attorney" if the defendant is not a "party." *See id*. (emphasis added). We determined above that Dr. Dingler did not become a "party" to the lawsuit until he was served with citation on June 11, 2008. Therefore, because Dr. Dingler was not a "party" to the lawsuit until June 2008, he was not a "party" to the lawsuit when the Tuckers served the report on Nocona on November 26, 2007. Because Dr. Dingler was not a "party" to the lawsuit when the Tuckers served Dr. Jenkins's report on Nocona in November 2007, the Tuckers' service of the

11

report upon Nocona did not and could not constitute service of the report on Dr. Dingler under the "party's attorney" language in section 74.351(a).

The Tuckers' argument that timely service of the report upon counsel for Nocona in November 2007 was sufficient to comply with section 74.351(a) because Nocona's counsel ultimately came to represent Dr. Dingler is contrary not only to section 74.351(a)'s plain language but also to well-established rules of civil procedure providing that a defendant has no duty to participate in proceedings until the defendant has been served, has accepted or waived service, or has made an appearance in the case. *See id*.; *Ross*, 197 S.W.3d at 797–98; *Harrell*, 73 Tex. at 616, 11 S.W. at 865; *see also Ramos v. Richardson*, Nos. 13-05-00204-CV, 13-05-00205-CV, 2008 WL 1822763, at *3 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.) ("Valley Baptist should not have been required to respond and object to a report before it was served with the lawsuit. . . . If a potential party were required to submit to the trial court's jurisdiction before being served, it would be required to waive issues regarding jurisdiction and service requirements.").

The Tuckers additionally contend that "no fewer than three (3) attempts were made by the post office to serve the citation on [Dr.] Dingler" and that this court is "entitled to infer that [Dr.] Dingler made a conscious decision not to claim certified mail from the court clerk." Although the record appears to

show that the post office made three attempts to serve Dr. Dingler with citation, that is all it shows. The Tuckers have not directed us to any evidence that Dr. Dingler avoided service or to any authority providing that failed attempts at service ipso facto demonstrate improper avoidance of service, and they have not explained what effect, if any, Dr. Dingler's alleged avoidance of service has on this specific issue. *See generally Bohannon v. Winston*, 238 S.W.3d 535, 538 (Tex. App.—Beaumont 2007, no pet.) ("The potential for gamesmanship does not vest the courts with the power to legislate; instead, we must apply the statute as it is written and address a party's misconduct in an appropriate manner when it occurs.")

Accordingly, as to Dr. Dingler, the Tuckers did not comply with section 74.351(a)'s requirement that they "serve on each party or the party's attorney" an expert report and curriculum vitae not later than the 120th day after the date the original petition was filed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). We hold that the trial court abused its discretion by denying Dr. Dingler's motion to dismiss the Tuckers' health care liability claim against him. We sustain Dr. Dingler's sole issue.

## VI. THE TUCKERS' APPEAL

In a single issue, the Tuckers argue that the trial court abused its discretion by dismissing their vicarious liability claims against Nocona. They

13

contend that they alleged vicarious liability against Nocona for Dr. Dingler's conduct; that Dr. Jenkins is qualified to render an expert opinion; and that Dr. Jenkins's report sufficiently set forth the applicable standard of care, how Dr. Dingler breached the standard of care, and how Dr. Dingler's breach of the standard of care caused the Tuckers' injuries. We agree.

A plaintiff asserting a healthcare liability claim against a principal does not have to provide a separate expert report as to the principal when the claim is premised on the acts of the principal's agent for which the plaintiff seeks to hold the principal vicariously liable. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008). In the Tuckers' original petition, they limited the specific allegations of negligence to *Dr. Dingler's* (1) "failure to take proper precautions," (2) "decision to remove aspirin and Plavix from [Linda's] medication," and (3) "failure to provide appropriate informed consent." The allegations calling into question the specific complained-of conduct are premised on the acts of only Dr. Dingler; they did not allege any specific acts of negligence committed by Nocona in its capacity as a principal. Nocona expressly recognized this; it stated in its objections to Dr. Jenkins's report, "Plaintiffs only assert that [Nocona] was negligent without specifying the manner of same." Nocona also filed special exceptions to the petition that were directed to the allegations against Dr. Dingler. Nocona's argument that

14

the petition can *only* be construed to allege a theory of direct liability against Nocona is inconsistent not only with the petition's unambiguous allegations limiting the claims against Nocona to vicarious liability for Dr. Dingler's conduct but also contrary to the fact that Nocona—a professional entity—cannot practice medicine. *See Moheb v. Harvey*, No. 09-08-00260-CV, 2008 WL 5501166, at *9 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.).

Further, the Tuckers filed an amended petition specifically alleging vicarious liability, presumably to clarify its allegations. The certificate of service certifies that the petition was served on counsel for Nocona on August 26, the same day the trial court heard arguments on the motions to dismiss, and Nocona never filed a motion to strike the amended pleading. Nor did Nocona miss an opportunity to assert objections to Dr. Jenkins's report on the basis of the Tuckers' vicarious liability claims; it had previously asserted objections to the report as to the vicarious liability claims, which the trial court must have considered in ruling on the objections. The Tuckers pleaded vicarious liability.

Nocona objected to Dr. Jenkins's qualifications to render an expert opinion as to whether Dr. Dingler departed from the applicable accepted standards of care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a). Nocona also objected that Dr. Jenkins is not qualified to render an expert

15

opinion because he is a pulmonary specialist, not a cardiologist. Dr. Jenkins's

report states in relevant part as follows:

> I am a physician in private practice in San Antonio, Texas. I am
> Board Certified in Internal Medicine and Pulmonary Disease. I see
> approximately 200 patients each month, half or more are over age
> fifty. It is common that my patients have been treated for coronary
> disease including angioplasty and stent placement. Many of these
> patients have additional illnesses including diabetes, high blood
> pressure, high cholesterol and anemia. In brief, my patients have
> conditions that are consistent with those manifested by [Linda]
> while she was under the care of Dr. Dingler. I consider myself
> qualified by education, training and experience to provide this
> report.
>
> . . . .
>
> It is within common medical knowledge, including that which
> should be known by internists, that medicines that decrease
> clotting by decreasing platelet function . . . are needed when stents
> are placed. Stopping these agents increases the risk of clot
> forming in the stent. This knowledge was available prior to
> 2005 . . . .

The report demonstrates that Dr. Jenkins meets each of the requirements

identified in section 74.401(a)—he was practicing medicine; he had knowledge

of accepted standards of medical care for the treatment, care, or injury involved

in the claim; and he was qualified on the basis of training or experience to opine

on the standard of care. *See id*. As for Nocona's argument that Dr. Jenkins

does not specialize in the same field as Dr. Dingler, in delineating the statutory

qualifications for a chapter 74 expert, the statute does not focus on the

defendant physician's area of expertise but on the condition involved in the claim. *See id*. § 74.401(a)(2) (requiring expert to have "knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition *involved in the claim*" (emphasis added)), § 74.401(c)(1), (2) (recognizing an expert may be qualified on the basis of training or experience if he or she is board certified or is practicing "in an area of medical practice *relevant to the claim*" (emphasis added)). That is, the applicable "standard of care" and an expert's ability to opine on it is dictated by the medical condition involved in the claim and by the expert's familiarity and experience with that condition. *See Granbury Minor Emergency Clinic v. Thiel*, No. 02-08-00467-CV, 2009 WL 2751026, at *4 (Tex. App.—Fort Worth Aug. 27, 2009, no pet.); *McKowen v. Ragston*, 263 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (permitting infectious disease physician to opine on standard of care for treating infection stemming from AV graft even though defendant doctor was cardiothoracic surgeon); *Blan v. Ali*, 7 S.W.3d 741, 746–47 & n.3 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Here, Dr. Jenkins stated that the hundreds of patients he sees each month have conditions that are consistent with the conditions manifested by Linda while she was under Dr. Dingler's care. Dr. Jenkins thus has familiarity and experience with the conditions involved in the claim. He is not unqualified

17

to render an opinion in this case simply because he is a pulmonary specialist and not a cardiologist. In light of this and the above, Dr. Jenkins demonstrated that he is qualified to opine on the issue of whether Dr. Dingler departed from the accepted standards of care in the case.

Nocona further objected that Dr. Jenkins's report failed to set out a fair summary of the applicable standard of care, how Dr. Dingler breached the standard of care, and how Dr. Dingler's breach of the standard of care caused Linda's injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). Dr. Jenkins's report states in relevant part as follows:

> The incident in question came to light on 10-26-05 when [Linda] was admitted to Nocona General Hospital under the care of Dr. Chance Dingler with chest pain. . . . Cardiac catheterization by Dr. Desire showed a clot at the site of the stent placement. This clot was successfully removed by Dr. Desire[.]
>
> The clot had formed at the site of a drug eluting coronary stent that was placed by Dr. Desire in August, 2005. As part of the treatment plan for the coronary stent, aspirin and Plavix (clopidogrel) had been given to protect the stent by preventing blood clots. The aspirin and Plavix had been [inadvertently] stopped for the intestinal evaluation. That these should <u>not</u> have been discontinued is admitted in the records . . . .
>
> . . . .
>
> The heart attack of 10-26-05 was caused by clot in the previously placed coronary stent. The formation of this clot was due to the withdrawal of aspirin and Plavix.
>
> . . . .

18

The relevant standard of care required that Dr. Dingler be aware of the need for appropriate medication and the consequences of discontinuing the medicine. In failing to recognize the need to protect the coronary stent with medication, and in stopping the medication, Dr. Dingler breached the required standard of care. This failure resulted in a heart attack with hospitalization, treatment for low blood pressure and pulmonary edema.

Dr. Dingler also breached the standard of care in failing to inform [Linda] of alternatives, risks and benefits and thus failed to obtain informed consent. There were alternative processes available. These included anticoagulation with heparin during the time when medication was discontinued, coordinating with the endoscopist to limit the procedures to inspection only without biopsy, or avoiding the endoscopic procedures altogether since the risk of a heart attack was greater than the risk of anemia. Dr. Dingler did not inform [Linda] of the alternatives and the associated risks and benefits. The standard of care required that [Linda] be informed of those alternatives, risks and benefits. Since [Linda] was not informed of these issues, informed consent was not provided.

Dr. Jenkins's report accordingly identified the applicable standards of care (awareness of the need for appropriate medication and the consequences of discontinuing the medicine and informing Linda of the alternatives, risks, and benefits regarding discontinuing medication); how Dr. Dingler breached the standard of care (failing to recognize the need to protect the coronary stent with medication, stopping the medication, and failing to inform Linda of medicinal alternatives); and how Dr. Dingler's breach caused Linda's injuries (failing to abide by the applicable standard of care caused Linda to have the heart attack). *See id*. The report also links Dr. Dingler's purported breach of

19

the applicable standards of care to Linda's alleged injuries. Dr. Jenkins's report represents an objective good faith effort to comply with the definition of an expert report in section 74.351(r)(6). *See id*. § 74.351(*l*).

Nocona argues that the Tuckers failed to sufficiently attack on appeal an independent ground that supports the trial court's judgment—the sufficiency of Dr. Jenkins's report as it pertains to Dr. Dingler—and that we are consequently compelled to affirm the trial court's order on this ground. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Midway Nat'l Bank of Grand Prairie, Tex. v. W. Tex. Wholesale Supply Co.*, 453 S.W.2d 460–61 (Tex. 1970); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, the Tuckers raised the issue of the sufficiency of the report in their briefing and included supporting argument relevant thereto. *See* Tex. R. App. P. 38.1(I). Thus, they did not fail to assign error to an independent ground that supports the trial court's order.

We hold that the trial court abused its discretion by sustaining Nocona's objections to Dr. Jenkins's report as it pertained to Dr. Dingler and by granting Nocona's motion to dismiss to the extent it sought dismissal of the Tuckers' claims against Nocona based on a theory of vicarious liability. We sustain the Tuckers' sole issue.

20

## VII. CONCLUSION

Having sustained Dr. Dingler's only issue, we reverse the trial court's order denying his motion to dismiss and remand to the trial court with instructions to enter an order dismissing the Tuckers' health care liability claim against Dr. Dingler, with prejudice, and awarding reasonable attorney's fees and court costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Having sustained the Tuckers' issue complaining about the trial court's order sustaining Nocona's objections to Dr. Jenkins's report as it pertained to Dr. Dingler and dismissing their vicarious liability claims against Nocona, we reverse the trial court's order granting Nocona's motion to dismiss on the basis of the Tuckers' vicarious liability claims and remand the case to the trial court for further proceedings.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, MCCOY, and MEIER, JJ.

LIVINGSTON, J. filed a concurring and dissenting opinion.

DELIVERED: November 19, 2009

21



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-002-CV

CHANCE W. DINGLER, M.D.                                          APPELLANT

V.

LINDA DIANE TUCKER AND                                          APPELLEES
MYRLE TUCKER

AND

LINDA DIANE TUCKER AND                                          APPELLANTS
MYRLE TUCKER

V.

NOCONA MEDICAL CLINIC, P.A.                                     APPELLEE

------------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## CONCURRING AND DISSENTING OPINION

------------

I respectfully dissent to Part V of the majority opinion, which relates only

to Dr. Dingler's appeal.  In all other respects, I join the majority decision.

I believe that once Dr. Dingler became a party to the suit—when he was served with citation—he was served with the expert report that same day because the attorneys who actually represent him in this litigation had already been served with the report on behalf of Nocona. While Dr. Dingler was not an actual "party" to the suit until June 11, 2008, when he was finally served with citation, the service of the expert report on Nocona's and Dr. Dingler's mutual attorneys, which had occurred previously, ripened as to Dr. Dingler on the day he became a party.[1] In other words, as to Dr. Dingler, it was a prematurely served report, but once service on Dr. Dingler was perfected, so too was service of the expert report. Furthermore, Dr. Dingler was a named defendant from the beginning of the suit so that the preclaim fact patterns that occurred in *Carrick v. Summers* and *St. Luke's Episcopal Hospital v. Poland* do not apply. *Carrick*, No. 09-09-00166-CV, 2009 WL 2616505, at *2–4 (Tex. App.—Beaumont Aug. 27, 2009, no pet.); *Poland*, 288 S.W.3d 38, 43–44 (Tex. App.—Houston [1st Dist.] 2009, pet. filed).[2]

---

[1] Nocona accepted service of citation by certified mail, but Dr. Dingler did not, and it took over 120 days to serve him personally.

[2] The Tuckers filed suit against Dr. Dingler and Nocona on November 5, 2007. They served Nocona by certified mail on November 6, 2007, and Nocona filed its answer on November 26, 2007, the same day that the Tuckers served their expert report on its attorney. The attempted service by certified mail on Dr. Dingler was returned by the post office marked "unclaimed" after several attempts to serve it. Dr. Dingler was finally served with citation by

Because the expert report was timely served, I do not believe Dr. Dingler should be dismissed from the suit. To hold otherwise allows the plaintiff no time after service of the suit on a later-served party within which to serve an expert report, which would result in a plaintiff's loss of access to the courts as to that potential defendant. *See* Tex. Const. art. I, § 13; *Gard v. Bandera County Appraisal Dist.*, No. 04-08-00802-CV, 2009 WL 1227818, at *3 (Tex. App.—San Antonio May 6, 2009, no pet.). Furthermore, we should not adopt a policy that rewards a potential defendant who is good at evading service of citation for more than the first 120 days after a suit is filed.

Therefore, I would conclude and hold that the duty to serve the report cannot begin to run until the particular defendant has been made a party and, in this particular case, would hold that Dr. Dingler's counsel was timely served with the expert report.

TERRIE LIVINGSTON
JUSTICE

DELIVERED: November 19, 2009

---

personal service on June 11, 2008.

3